```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
---
UNITE HERE RETIREMENT FUND and
TRUSTEES OF THE UNITE HERE
RETIREMENT FUND
      Plaintiffs,

  - against -

P.D. 33 STREET CORP. ET AL.

      Defendants.

---

19 cv 3855 (JGK)

MEMORANDUM OPINION AND
ORDER

JOHN G. KOELTL, District Judge:

  The plaintiffs, Unite Here Retirement Fund (the "Fund") and the Fund's trustees, bring this suit seeking withdrawal liability payments pursuant to Section 4201 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). Following the entry of a Default Judgment against P.D. 33 Street Corp. ("P.D."), the case was referred to Magistrate Judge Kevin Nathaniel Fox for an inquest on damages. After receiving submissions from the plaintiffs, the Magistrate Judge issued a Report and Recommendation concluding that this Court should not award damages or attorney's fees but should award $1,260 in costs. The plaintiffs timely objected to the Report and Recommendation. For the reasons that follow, the Court declines to adopt the Report and Recommendation.

## I. Background

  The plaintiffs bring this suit seeking withdrawal liability payments under ERISA, resulting from P.D.'s withdrawal from a

multiemployer plan. Am. Compl. ¶¶ 1, 4. P.D. has not appeared. After receiving a Clerk's Certificate of Default against P.D., ECF No. 27, this Court entered an Order to Show Cause for Default Judgment. ECF No. 28. The plaintiffs timely filed proof of service of the Order to Show Cause. ECF No. 29. After a hearing at which P.D. did not appear, this Court entered an Order entitling the plaintiffs to a Default Judgment against P.D. and referring the matter to the Magistrate Judge for an inquest on damages. ECF No. 30.

The plaintiffs filed Proposed Findings of Fact and Conclusions of Law, a Memorandum of Law, and a Declaration in support of their request for damages, attorney's fees, and costs. ECF No. 33. On May 27, 2020, the Magistrate Judge issued a Report and Recommendation concluding that the plaintiffs were not entitled to damages or attorney's fees, but that the plaintiffs were entitled to $1,260 in costs. ECF No. 34. The Magistrate Judge based the Report and Recommendation on the filings that the plaintiffs submitted and noted that some of the filings were deficient or not what they purported to be. ECF No. 34, at 9-12. The plaintiffs then filed a letter motion for leave to refile corrected documents at issue in the inquest. ECF No. 35. That motion was denied. ECF No. 36. The plaintiffs then filed a timely Objection to the Report and Recommendation. ECF No. 37.

2

After the Magistrate Judge filed the Report and Recommendation, this Court entered two Orders extending the time for P.D. to file an opposition to the plaintiffs' Objections. ECF Nos. 38 & 39. P.D. did not respond and the Court therefore rules on the papers currently submitted.

## II. Legal Standard

When reviewing objections to a Magistrate Judge's Report and Recommendation, the district court must "make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). The district court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). "[I]t is sufficient that the court arrive at its own independent conclusion regarding those portions of the report to which objections are made," and the court "need not conduct a de novo hearing on the matter." In re Hulley Enters. Ltd., 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019) (quoting Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985)).[1]

At an inquest on damages following the entry of a default judgment, "[a] court should take any necessary steps to

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

3

establish damages with reasonable certainty." Herrara v. 12 Water St. Gourmet Cafe, Ltd., No. 13-cv-4370, 2016 WL 1274944, at *4 (S.D.N.Y. Feb. 29, 2016), report and recommendation adopted, 2016 WL 1268266 (S.D.N.Y. Mar. 31, 2016); see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

### III. Damages

Under ERISA, an employer that withdraws from a multiemployer plan is, with some exceptions, assessed withdrawal liability and must continue paying its proportionate share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1383, 1399. An employer completely withdraws from a multiemployer plan when it "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." Id. § 1383(a). When an employer completely withdraws from a plan, the plan sponsor is responsible for determining the amount of the employer's withdrawal liability, notifying the employer, and collecting the withdrawal liability amount. Id. § 1382. An employer has 90 days from the receipt of the assessment notice to request review by the plan sponsor of any specific matter relating to the determination of the employer's liability. Id. § 1399(b)(2)(A). "Any dispute" between the employer and plan sponsor concerning withdrawal liability—that is, any determination made under Sections

1381-99—"shall be resolved through arbitration." Id. § 1401(a)(1).

If an employer fails to initiate an arbitration proceeding by the deadline set by Section 1401, it is barred from contesting the adequacy of notice, the amount owed, or the imposition of the liability. Id. § 1401(b)(1); see Am. Fed'n of Musicians and Emps'. Pension Fund v. Neshoma Orchestra & Singers, Inc., 974 F.3d 117, 120-121 (2d Cir. 2020); Amalgamated Lithographers of Am. v. Unz & Co., 670 F. Supp. 2d 214, 225-26 (S.D.N.Y. 2009); Bowers v. Greenpoint Warehousing & Distribution Servs., Inc., No. 91-cv-3784, 1992 WL 110756, at *2 (S.D.N.Y. May 5, 1992) ("Failure to initiate arbitration within the statutory time period operates as a waiver of arbitration, thereby fixing the withdrawal liability and foreclosing any challenge to its imposition."); see also Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir. 1990). "Accordingly, if an employer fails to initiate the arbitration process to contest the amount of withdrawal liability assessed against it, the employer has waived its right to arbitration, and a federal court will not make an independent determination that the plan sponsor's assessment was unreasonable." Vacca v. Bridge Chrysler Jeep Dodge, Inc., No. 06-cv-3543, 2008 WL 4426875, at *6 (E.D.N.Y. Sept. 4, 2008), report and recommendation adopted, (E.D.N.Y. July 1, 2009); see

5

also Nat'l Pension Plan of Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc., No. 05-cv-6138, 2006 WL 2051107, at *10 (S.D.N.Y. July 21, 2006) ("By failing to timely initiate arbitration according to ERISA's provisions, Defendants waived their right to arbitrate the withdrawal liability assessment.").

Notwithstanding the plaintiffs' submissions, the Magistrate Judge concluded that the plaintiffs were not entitled to any damages. The Magistrate Judge found that the plaintiffs' declaration was deficient for several reasons: First, the declaration by Regina Hertzig, an attorney for the plaintiffs, contained factual allegations without personal knowledge regarding the relationship between the parties. Second, the declaration purported to attach a February 5, 2019 letter, but the attachment was actually the January 3, 2019 letter in which the Fund advised P.D. that its withdrawal liability was $893,412. Third, the declaration did not contain enough detail with respect to the amount of interest owed. On these bases, the Magistrate Judge concluded that the plaintiffs were not entitled to any damages because they "failed to prove their damages, namely withdrawal liability, interest and liquidated damages, with reasonable certainty." ECF No. 34, at 10. The plaintiffs then sought to submit a corrected declaration to account for the deficiencies noted by the Magistrate Judge. The

6

Magistrate Judge denied the plaintiffs' request to submit a corrected declaration, finding "no reason to allow the plaintiffs an opportunity to do now what they should have done previously or to expend [the court's] limited resources unnecessarily." ECF No. 36.

Contrary to the Magistrate Judge's conclusions, it is plain that the plaintiffs are entitled to damages. Because P.D. failed to contest the plaintiffs' withdrawal liability assessment, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1); see Amalgamated Lithographers of Am., 670 F. Supp. 2d at 225-26. Unlike cases where the plaintiffs cannot prove damages with reasonable certainty, this is not a case in which an award of no damages is warranted because the plaintiff seeks damages based on "a multitude of assumptions that require[] speculation and conjecture and few known factors[.]" Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000) (quoting Kenford Co., Inc. v. Erie County, 493 N.E.2d 234, 236 (N.Y. 1986). Rather, the damages easily could be established with corrections to the plaintiffs' documentation. To the extent that the documentary submissions were insufficient, the Magistrate Judge could have granted the plaintiffs' request to correct their submissions or held an evidentiary hearing rather than denying all damages in a

7

case where it is plain that the plaintiff did in fact suffer substantial damages that could be calculated with reasonable certainty. The principal case cited by the Magistrate Judge in denying an award of damages, Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105 (2d Cir. 1997), was not am ERISA case, nor does Transatlantic Marine itself provide guidance about what is required of a court in order "to establish damages with reasonable certainty." See id. at 111 (remanding the case to the district court with instructions, if admiralty jurisdiction is proper, simply to "determine the damages based on appropriate evidence"). Moreover, the January 3, 2019 letter was included in the record as an attachment to the Amended Complaint. A February 5, 2019 letter from the Fund advising P.D. that the plaintiffs had not received the payment due on February 1, 2019 was also included as an attachment to the Amended Complaint.

Considering the plaintiffs' submissions to this Court, the plaintiffs have established that they are entitled to damages in the amount of $893,412.00 in withdrawal liability, $178,682.40 in liquidated damages, and $50,915.61 in interest, for a total of $1,123,010.01.

The $893,412.00 in withdrawal is clearly established by the plaintiffs' January 3, 2019 and February 5, 2019 letters to P.D. Those letters establish the amount of withdrawal liability and

that P.D. would be in default 60 days after receipt of the February 5, 2019 letter. See 29 U.S.C. § 1399(c)(5). The plaintiffs make the uncontested assertion that P.D. has not responded to the letters to contest the amount or made any payments. The plaintiffs cured the evidentiary defect noted by the Magistrate Judge by submitting a sworn declaration by a person with knowledge, namely the Fund Manager, who in turn authenticated the January 3, 2019 and February 5, 2019 letters attached to the Amended Complaint. Because P.D. has not initiated arbitration or otherwise contested the amount of withdrawal liability, that amount is fixed. 29 U.S.C. § 1401(b)(1); see Amalgamated Lithographers of Am., 670 F. Supp. 2d at 225-26.

The $178,682.40 in liquidated damages is appropriate pursuant to ERISA Section 502(g) and the Fund's Collection Policy. Section 502(g) and the Fund's Collection Policy state that the liquidated damages on delinquent withdrawal liability payments equal the greater of the interest owed or 20 percent of the delinquent withdrawal liability payment. See 29 U.S.C. 1132(g)(2)(C); ECF No. 37, Ex. A at 7. In this case, 20 percent of the delinquent withdrawal liability is greater than the interest owed, and therefore the plaintiffs are entitled to $178,682.40, which represents 20 percent of the delinquent withdrawal liability payment.

9

The $50,915.61 in interest payments represents the interest for the period between April 6, 2019 to June 8, 2020. That period represents the time from when P.D. defaulted on its obligation to the day one of the Fund's attorneys calculated the appropriate interest and signed a declaration attesting to the interest calculation. ECF No. 37, Ex. B ¶ 4. Under Section 502(g), the plaintiffs are entitled to interest on unpaid contributions. 29 U.S.C. 1132(g)(2)(B). The Fund's Collection Policy sets the interest rate as equal to that specified in 29 C.F.R. § 4219.32(b), which in turn sets interest as the average quoted prime rate on short-term commercial loans for the fifteenth day of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System. The attorney's declaration explains that the plaintiffs used the appropriate interest rate and applied it for the period between April 6, 2019 to June 8, 2020. Accordingly, the plaintiffs are entitled to $50,915.61 in interest.

### IV.  Attorney's Fees

The plaintiffs seek attorney's fees in the amount of $6,230. A court must award reasonable attorney's fees in any ERISA action involving delinquent contributions brought by a fiduciary for or on behalf of a plan where a judgment is entered in favor of the plan. 29 U.S.C. § 1132(g)(2)(D). In

determining the amount of a fee award, district courts must calculate the "presumptively reasonable fee." Simmons v. New York City Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). "The starting point for determining the presumptive reasonable [fee] is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." Charles v. City of New York, No. 13-cv-3547, 2014 WL 4384155, at *2 (S.D.N.Y. Sept. 4, 2014) (quoting Gaia House Mezz LLC v. State Street Bank & Trust Co., No. 11-cv-3186, 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014)). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons, 575 F.3d at 174 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112, 118 (2d Cir. 2007)). To arrive at a reasonable fee, courts consider, among other factors, the factors set forth in Johnson v. Ga. Highway Express Inc., 488 F.2d 714, 717-719 (5th Cir. 1974). See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008).[2] Courts also "consider the

---

[2] The twelve Johnson factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the

11

rates charged by attorneys of comparable skill, experience, and reputation in the community." Nature's Enters., Inc. v. Pearson, No. 08-cv-8549, 2010 WL 447377, at *9 (S.D.N.Y. Feb. 9, 2010).

"In ruling on applications for fees, district courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). Billed hours that are "excessive, redundant, or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998). Courts do not ask "whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); see also Walker v. City of New York, No. 11-cv-314, 2015 WL 4568305, at *8 (E.D.N.Y. July 28, 2015). "As the fee applicant, plaintiffs bear the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." Allende v. Unitech Design, Inc., 783

---

case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 186 n.3.

F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (quoting General Elec. Co. v. Compagnie Euralair, S.A., 96-cv-884, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997)).

The Magistrate Judge denied all attorney's fees because the court did not find that "any number of hours spent by counsel in this matter is reasonable." ECF No. 34, at 12. Specifically, the Magistrate Judge found that there were no novel or complex issues in this case, and therefore it was inappropriate to have three partners work on this case; that there was no justification for having multiple attorneys perform the "duplicative task of performing 'Review of and Revision to default Affidavit'"; and that the number of hours spent on the case was excessive. Id. at 11-12. The plaintiffs have corrected their application to remove duplicate work and it is plain that the plaintiffs are entitled to reasonable attorney's fees for submitting an application that has successfully obtained an award of over $1,100,000 for the Fund.

In their Objections to the Report and Recommendation, the plaintiffs amended their request for attorney's fees. Where they originally sought attorney's fees for 46.30 hours of work, they now seek attorney's fees for 17.8 hours at $350 per hour. The rate of $350 is reasonable and consistent with fees awarded in similar actions in this district. See, e.g., Doe v. Unum Life Ins. Co. of Am., No. 12-cv-9327, 2016 WL 335867, at *4-6

13

(S.D.N.Y. Jan 28, 2016), report and recommendation adopted, 2016 WL 749886 (S.D.N.Y. Feb. 23, 2016); Wallace v. Grp. Long Term Disability Plan for Emps. Of TDAmeritrade Holding Corp., 13-cv-6759, 2015 WL 4750763, at *6 (S.D.N.Y. Aug. 11, 2015); Demonchaux v. Unitedhealthcare Oxford, 10-cv-4491, 2014 WL 1273772, at *7 (S.D.N.Y. Mar. 27, 2014).  The number of hours has been significantly reduced and only includes time for the lead attorney on the matter.  Moreover, the hours billed do not include time preparing for the inquest on damages or the Objections currently before the Court.  Based on a review of the time records for this matter, the number of hours spent for which compensation is sought is reasonable.

Accordingly, the plaintiffs are entitled to $6,230 in attorney's fees.

## V. Costs

Under ERISA Section 502(g), the plaintiffs are entitled to reasonable costs of the action.  29 U.S.C. § 1132(g)(2)(D).  The Magistrate Judge concluded that the plaintiffs were entitled to $1,260 in costs.  The plaintiffs state that they paid $400 in filing fees and $987 in filing fees.  Adding these amounts equals $1,387.00.  In the declaration submitted, the plaintiffs at one point seek $1,387 in costs, and later seek $1,412 in costs, which includes a $25 messenger fee.  Costs in the amount of $1,387 are reasonable because the plaintiffs do not explain

14

with particularity the purpose of the messenger fee or submit receipts or invoices to substantiate the $25 messenger fee. The remaining costs for the filing fee and process server are reasonable.

Accordingly, the plaintiffs are entitled to $1,387 in costs.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the Court declines to adopt the Report and Recommendation of the Magistrate Judge with respect to the plaintiffs' award of damages, attorney's fees, and costs. The Clerk is directed to enter judgment in favor of the plaintiffs and against P.D. in the following amounts: (1) $1,123,010.01 in damages, consisting of withdrawal liability, liquidated damages, and interest; (2) $6,230 in attorney's fees; and (3) $1,387 in costs, for a total of $1,130,627.01. The Clerk also is directed to close all pending motions and to close this case.

SO ORDERED.

Dated:   New York, New York
         November 9, 2020

_____
John G. Koeltl
United States District Judge